## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| KATHERINE FINGER, <br><br> Plaintiff, <br><br> v. <br><br> LAWSON PRODUCTS, INC., MICHAEL G. DECATA, ANDREW H. ALBERT, I. STEVEN EDELSON, LEE S. HILLMAN, J. BRYAN KING, MARK F. MOON, and BIANCA A. RHODES, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Lawson Products, Inc. ("Lawson" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Luther King Capital Management Corporation ("LKCM") will acquire the Company through mergers with TestEquity Acquisition, LLC ("TestEquity") and 301 HW Opus Holdings, Inc. ("Gexpro Services"), two portfolio companies of LKCM Headwater Investments ("LKCM Headwater"), the private investment arm of LKCM (the "Proposed Transaction").[1]

---

[1] Non-party LKCM is a privately-owned wealth management firm established in 1979 with approximately $25 billion of assets under management. LKCM owns approximately 47.7% of the

2. On December 29, 2021, Lawson announced that it had entered into an Agreement and Plan of Merger with each of TestEquity and Gexpro Services (the "Merger Agreements"), pursuant to which, Lawson, TestEquity and Gexpro Services will merge in an all-stock transaction, with Lawson's existing stockholders owning approximately 47% of the combined company, and existing owners of TestEquity and Gexpro Services owning approximately 17% and 36% of the combined company, respectively.

3. On February 10, 2021, Lawson filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Lawson stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

---

Company's outstanding shares. Upon closing of the Proposed Transaction, LKCM will own approximately 77.4% of the combined company. Non-party TestEquity is a Delaware limited liability company, with its principal executive offices located at 6100 Condor Drive, Moorpark, California 93021. TestEquity is a portfolio company of LKCM Headwater. Non-party Gexpro Services is a Delaware corporation, with its principal executive offices located at 9500 North Royal Lane, Suite 130, Irving, Texas 75063. Gexpro Services also is a portfolio company of LKCM Headwater.

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of Lawson.

10. Defendant Lawson is a Delaware corporation with its principal executive offices located at 8770 W. Bryn Mawr Avenue, Suite 900, Chicago, Illinois 60631. Lawson's shares trade on the NASDAQ Global Select Market under the ticker symbol "LAWS."

11. Defendant Michael G. DeCata ("DeCata") is and has been President and Chief Executive Officer ("CEO") of the Company since 2012, and as a director since 2013.

12. Defendant Andrew H. Albert ("Albert") is and has been a director of the Company since 2009.

13. Defendant I. Steven Edelson ("Edelson") is and has been a director of the Company since 2009.

14. Defendant Lee S. Hillman ("Hillman") is and has been the lead independent director of the Company since March 2017, and as a director of the Company since 2004.

15. Defendant J. Bryan King ("King") is Chairman of the Board and is and has been a director of the Company since 2017. Defendant King is also a Principal of LKCM.

16. Defendant Mark F. Moon ("Moon") is and has been a director of the Company since 2019. Defendant Moon is also an advisor and operating partner for LKCM.

17. Defendant Bianca A. Rhodes ("Rhodes") is and has been a director of the Company since 2021.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On December 29, 2021, Lawson announced in relevant part:

CHICAGO & FORT WORTH, Texas--Lawson Products, Inc. (NASDAQ: LAWS) ("Lawson"), a leading distributor of products and services to the MRO marketplace, and LKCM Headwater Investments ("LKCM Headwater"), the private investment arm of Luther King Capital Management Corporation, today jointly announced the execution of definitive merger agreements pursuant to which Lawson will combine in an accretive transaction on an adjusted basis with two of LKCM Headwater's portfolio companies, TestEquity and Gexpro Services, in an all stock transaction. The affiliates of LKCM Headwater that currently own TestEquity and Gexpro Services will receive solely Lawson common stock as consideration for the transactions. All three leading niche industrial distribution companies will be brought under a holding company with all three companies operating independently with their existing management teams as separate divisions.

Upon closing of the combination, Lawson's capitalization is expected to consist of approximately 19,400,000 shares, of which approximately 9,100,000 shares, or 47%, would be held by existing Lawson shareholders, 3,300,000 shares, or 17%, would be held by the existing owners of TestEquity (including LKCM Headwater affiliates and the TestEquity management team), and 7,000,000 shares, or 36%, would be held by the existing owners of Gexpro Services (including LKCM Headwater affiliates and the Gexpro Services management team). Existing owners of TestEquity and Gexpro Services also have the ability to earn an additional 700,000 shares and 1,000,000 shares, respectively, upon achieving certain additional accretion and other metrics set forth in the merger agreements.

Affiliates of LKCM Headwater currently beneficially own approximately 48% of Lawson's outstanding shares. Upon completion of the combination, affiliates of LKCM Headwater will beneficially own approximately 75% of Lawson's shares, and their ownership would increase to approximately 77% of Lawson's shares if all of the 1,700,000 additional shares are earned.

All Lawson shares outstanding immediately before the completion of the combination will remain outstanding after the combination, and existing Lawson shareholders will continue to hold shares in the combined company.

**Combined Holding Company Highlights**

- Combined estimated pro forma annual revenue of more than $1 billion and combined estimated pro forma annual adjusted EBITDA of more than $100 million
- Balanced mix of production (OEM) and maintenance/aftermarket (MRO) serving 120,000+ longstanding customers reduces cyclical impacts of short- and long-term demand drivers
- Ability to enhance long-term organic growth rates through offering more products and services to each company's customers and our end markets, many of which are experiencing secular tailwinds
- Robust acquisition pipeline with active negotiations with several accretive targets likely to close in the next 6 to 18 months
- Enhanced product sourcing opportunities including private label opportunities while expanding channels to market
- Ability to leverage best practices, back-office resources and technology across the platform to help drive operating efficiencies and leverage shared solutions
- Long-term investor with distribution focus as strategic partner with long-term investment horizon to compliment best-in-class management teams that are well-aligned with shareholders and focused on growing their businesses together
- Asset-light business model with keen focus on generating high returns on invested capital
- Pro forma debt to adjusted EBITDA of approximately 3x at closing

"Through the combination of these three complementary valued-added distribution businesses, we strongly believe the holding company will be well-positioned to leverage its combined leadership, strong balance sheet and stable cash flow generation to drive more transformational value creation for shareholders," said J. Bryan King, Chairman of the Board of Directors of Lawson and Managing Partner of LKCM Headwater. "Our confidence in the ultimate success of the combination is evident in that we will receive no cash proceeds, and not sell any shares in connection with the combination. We will maintain a substantial investment in the combined company. We have approached and will continue to approach the combination of these businesses by aligning our interests with those of current Lawson shareholders, as well as the interests of other long-term shareholders in the holding company. Beyond our financial commitment, our investment team has invested, and will continue to invest, substantial amounts of their time engaging in constructive efforts to leverage our resources and extensive distribution expertise to create a more valuable and durable business, without receiving any compensation from the holding company, including my continued service as Chairman on an unpaid basis."

Mr. King continued, "Our long-term value creation perspective in the industrial distribution segment has been refined over decades. This strategy has been heavily

vetted with the focus of driving further shareholder returns and creating value with lower risk for each of the three complementary businesses. We believe these businesses will have a greater ability to compound shareholder returns faster through scale, while creating higher sustained returns for investors with the right collection of leadership identifying and executing on organic and inorganic opportunities to sustain that compounding engine."

"This combined publicly-traded specialty distribution holding company is expected to generate estimated pro forma annual revenue of more than $1 billion and estimated pro forma annual adjusted EBITDA of more than $100 million upon the closing of the combination. At these levels, we believe the holding company will be well-positioned to reinvest opportunistically and selectively in a pipeline of organic and acquisitive growth opportunities in its large, fragmented markets with secular tailwinds. The combination is expected to create the ability to accelerate cash flow growth, maintain the flexibility to opportunistically engage in share buybacks, and further improve the long-term competitive position of each of the industrial distribution verticals within the post-combination holding company," concluded Mr. King.

"As the CEO and a fellow shareholder of Lawson, I am excited to be moving forward with the LKCM Headwater team to have an aligned vision and mission of creating a best-in-class specialty distribution holding company. This combination transforms each of our highly complementary businesses, creates a greater level of scale, enables accelerated growth, and expands our competitive advantage," said Michael DeCata, President and Chief Executive Officer of Lawson. "I am proud of the job our team has done over the past several years building a platform for growth and improving profitability. This combination will provide all three companies with a more complete offering of products, services, and capabilities to enhance the value proposition for current and future customers. Going forward, we will have a more robust set of acquisition opportunities where cross-selling and cost synergies will play an important role in delivering enhanced financial performance and greater returns to shareholders. We will also benefit significantly from even more focused support from the LKCM Headwater team and their long history of working proactively with management teams in the industrial distribution segment to maximize long-term shareholder value creation," concluded Mr. DeCata.

**Strategic and Financial Rationale**

The holding company structure is expected to enable Lawson, TestEquity and Gexpro Services to maintain their respective high-touch, technical, value-added service delivery models and customer relationships within their specialty distribution businesses under the leadership of their separate business unit management teams with continued oversight from Lawson's board of directors. The holding company will have the ability to utilize its combined financial resources to accelerate its expansion strategy through business acquisitions and organic growth across the combined platform. At the same time, the holding company structure will enable the combined companies to leverage best practices, back-office resources and technology across the platform to help drive operating efficiencies and leverage shared solutions.

The combination is expected to increase the reach of the combined companies into the highly fragmented OEM/MRO distribution markets and broaden their service capabilities, including vendor managed inventory, beyond Lawson's existing MRO focus. Lawson currently services approximately 90,000 customers, while TestEquity and Gexpro Services provide support to over 30,000 and over 1,800 customers, respectively. The combination will result in greater end market diversification for the holding company with the addition of a significant presence in the OEM distribution and electronic test and measurement equipment and supplies market. The holding company will have the ability to be a one-stop provider for OEM and MRO customers and will enable Lawson, TestEquity and Gexpro Services to cross-sell and deliver their services across the combined customer base.

The combination will also provide the opportunity to expand digital marketing channels to Lawson's historical sales channel of on-site sales representatives. In addition, the combination will enable the combined companies to improve their product sourcing capabilities and purchasing power within overlapping and new suppliers.

**Leadership and Governance**

Upon the closing of the combination, Lawson, TestEquity and Gexpro Services will continue to be led by their existing senior management teams. J. Bryan King will continue to serve as Chairman of the Board of Directors of the holding company alongside the existing individuals serving on the board of directors of Lawson. Robert Connors will continue to serve as the Chief Executive Officer of Gexpro Services and Steve Newland will continue to serve as Chief Executive Officer of TestEquity. Michael DeCata and Ron Knutson will assume the positions of Chief Executive Officer and Chief Financial Officer, respectively, of the holding company in addition to their responsibilities at Lawson's existing operating company.

**Timing, Approval and Advisors**

The combination is subject to various closing conditions, including receipt of regulatory approvals and the approval by the affirmative vote of the holders of a majority of the total voting power of Lawson shares not owned by various affiliates of LKCM Headwater present in person or by proxy at a special stockholders meeting, where a majority of the outstanding Lawson shares not owned by various affiliates of LKCM Headwater are present in person or by proxy at the special meeting. The combination is expected to close during the second quarter of 2022. The Board of Directors of Lawson formed a Special Committee of independent directors who are independent of LKCM Headwater to evaluate and negotiate the transactions on behalf of Lawson. The Special Committee approved, among other things, the merger agreements and the transactions contemplated thereby and recommended that Lawson's Board of Directors approve the merger agreements and the transactions contemplated thereby. Thereafter, Lawson's Board of Directors (acting on the recommendation of the Special Committee), with certain directors recusing themselves from the vote, approved among other things the merger agreements and the contemplated transactions.

Cowen served as exclusive financial advisor to the Special Committee. Piper Sandler served as exclusive financial advisor, and provided a fairness opinion, to TestEquity and Gexpro Services. Baird served as financial advisor to LKCM Headwater. Jenner and Block served as counsel to the Special Committee and Lawson, and Mayer Brown served as counsel to TestEquity and Gexpro Services.

**The Proxy Statement Contains Material Misstatements or Omissions**

20. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Lawson's stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

21. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's financial projections and the valuation analyses underlying the fairness opinion provided by the Company's financial advisor, Cowen and Company, LLC ("Cowen").

*Material Omissions Concerning the Company's Financial Forecasts and the Financial Analyses Relied on by the Board*

22. The Proxy Statement omits material information regarding the financial forecasts for the Company, TestEquity and Gexpro Services, including the line items underlying Lawsons' forecasts for: (a) EBITDA; (b) Adjusted EBITDA; and (c) Unlevered Free Cash Flow.

23. Similarly, the Proxy Statement fails to disclose all line items underlying TestEquity's and Gexpro Services' respective forecasts for: (a) EBITDA; and (b) Unlevered Free Cash Flow.

24. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Cowen.

25. The Proxy Statement describes the Cowen fairness opinion and the various underlying valuation analyses. Those descriptions, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public

8

stockholders from fully understanding Cowen's work. As a result, Lawson stockholders cannot assess what significance to place on Cowen's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

26. With respect to the *Discounted Cash Flow Analysis* of TestEquity, Gexpro Services and Lawson performed by Cowen, the Proxy Statement fails to disclose: (a) the individual inputs and assumptions underlying the discount rate ranges of (i) 8.75% to 10.75% for TestEquity and Gexpro Services, and (ii) 7.5% to 9.5% for Lawson; and (c) the estimated terminal values for TestEquity, Gexpro Services, and Lawson.

27. With respect to the *Selected Publicly Traded Companies Analyses* of TestEquity, Gexpro Services, and Lawson performed by Cowen, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Cowen.

28. The omission of this material information renders the "Certain Lawson, TestEquity and Gexpro Services Unaudited Prospective Financial Information" and "Opinions of the Financial Advisor to the Special Committee" materially misleading. Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

29. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Lawson stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

30. Plaintiff repeats all previous allegations as if set forth in full.

31. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

32. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cowen. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

33. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

34. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

35. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

36.  Plaintiff repeats all previous allegations as if set forth in full.

37.  The Individual Defendants acted as controlling persons of Lawson within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Lawson, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

40.  In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

41. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Lawson's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Lawson, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Lawson stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  March 3, 2022                                            **LONG LAW, LLC**

                                                                 By  */s/ Brian D. Long*
                                                                     Brian D. Long (#4347)
                                                                     3828 Kennett Pike, Suite 208
                                                                     Wilmington, DE 19807
                                                                     Telephone: (302) 729-9100
                                                                     Email: BDLong@longlawde.com

                                                                 *Attorneys for Plaintiff*